**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| ALAIN SAMSON, | |
| Plaintiff, | |
| v. | CIVIL ACTION NO. |
| DNA BEHAVIOR SOLUTIONS LLC, | |
| Defendant. | |

**COMPLAINT AND JURY DEMAND**

1.      This action arises from DNA Behavior Solutions LLC's ("DNAB") willful violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq. ("FCRA"), and Georgia common law.

2.      DNAB violated FCRA and Georgia law when it disclosed Plaintiff's highly sensitive behavioral assessment reports (the "Reports") without his written consent by posting them on its publicly accessible web server and hyperlinking to them from its commercial website.

3.      While there is no longer a hyperlink to the Reports on DNAB's website, they are still hosted on its web server, have been indexed by Google— and likely many other search engines—making them easily obtainable through basic keyword searches related to Plaintiff.

1

4. Plaintiff seeks statutory damages, actual damages, punitive damages, and attorney's fees and costs.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction over Plaintiff's FCRA claims pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681p.

6. This Court has supplemental jurisdiction over Mr. Samson's state law claims pursuant to 28 U.S.C. § 1367(a) because they form part of the same case or controversy as his federal claims.

7. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(1)–(2) because DNAB's principal place of business is in this district and a substantial part of the events giving rise to this action occurred in this district.

8. This Court has personal jurisdiction over DNAB because it maintains its principal place of business within this district.

## PARTIES

9. Plaintiff Alain Samson is a United States citizen residing in Australia.

10. Defendant DNA Behavior Solutions LLC is a Georgia limited liability company with its principal place of business located at 3372 Peachtree Road, Suite 115, Atlanta, Georgia 30326.

## BACKGROUND

11.    DNAB is engaged in the business of providing behavioral assessment services to individuals and organizations, including employers, for use in employment decisions, client relationship management, and financial advisory services.

12.    DNAB markets itself as a provider of "behavioral finance" and "psychometric" assessment tools that measure individuals' behavioral styles, financial behaviors, risk tolerance, decision-making patterns, and personality characteristics.

13.    DNAB's assessment products include the "Work Talent Report" and "Financial Behavior Report," which evaluate an individual's work-related behavioral tendencies, financial decision-making patterns, risk propensity, behavioral biases, and personal characteristics.

14.    DNAB furnishes these behavioral assessment reports to third parties, including employers, financial services firms, and other businesses, for use in making employment decisions, evaluating job candidates, managing client relationships, and assessing individuals' suitability for various roles and responsibilities.

15.    DNAB charges fees for its behavioral assessment services and generates revenue by selling access to these reports to third-party organizations.

## PLAINTIFF'S ENGAGEMENT WITH DNAB

16.    On or around August 20, 2025, DNAB engaged Plaintiff as a full-time independent contractor commencing September 1, 2025, pursuant to a Memorandum of Understanding.

17.    Prior to his engagement with DNAB, Plaintiff completed DNAB's proprietary behavioral assessments.

18.    These assessments generated two reports: a Work Talent Report and a Financial Behavior Report.

19.    The Reports contain highly sensitive personal information about Plaintiff, including detailed evaluations of his:

        a.    Behavioral characteristics and personality traits;

        b.    Work-related behavioral tendencies;

        c.    Financial decision-making patterns;

        d.    Risk tolerance and risk-taking propensity;

        e.    Behavioral biases in financial and professional contexts;

        f.    Interpersonal communication style;

        g.    Emotional regulation patterns; and

        h.    Character traits and personal characteristics.

20.    The Reports include statements that Plaintiff is "inflexible" and "perfectionistic," "ha[s] difficulty letting matters go," and "[h]as emotional impulses and makes spur of the moment decisions."

4

21. DNAB terminated Plaintiff's contractual relationship on October 31, 2025.

## DNAB'S UNAUTHORIZED DISCLOSURE OF PLAINTIFF'S REPORTS

22. DNAB featured Plaintiff's name and image prominently on its "Our Team" webpage at dnabehavior.com/our-team.

23. DNAB merged the two Reports into a single PDF file and uploaded it to the company's publicly accessible web server, making it available to anyone on the internet who accessed the file's URL. DNAB then embedded a hyperlink to the Reports in the text of Plaintiff's name on the "Our Team" webpage.

24. Plaintiff never provided written consent for DNAB to publish, disseminate, or make his Reports publicly accessible in any manner.

25. The Reports remain accessible on DNAB's web server at the original URL despite its removal of Plaintiff's name and image from the website.

26. The URL for the merged Reports has been indexed by Google—and likely other search engines—allowing it to appear in search results related to Plaintiff.

27. As a result of DNAB's actions, the Reports—containing some of Plaintiff's most private and sensitive personal information—have been and

continue to be accessible to the general public, including current and prospective employers, clients, colleagues, and any other person who conducts an internet search for his name or encounters the indexed URL.

28.    Plaintiff first discovered the Reports were publicly accessible in or around January 2026.

## DNAB IS A CONSUMER REPORTING AGENCY UNDER FCRA

29.    DNAB is a "consumer reporting agency" as defined by FCRA. *See* 15 U.S.C. § 1681a(f).

30.    DNAB, for monetary fees, regularly engages in the practice of assembling or evaluating information on consumers for the purpose of furnishing consumer reports to third parties.

31.    DNAB's business model involves collecting behavioral and psychometric data from individuals, analyzing that data to generate behavioral assessment reports, and furnishing those reports to third parties such as employers and financial services firms.

32.    DNAB markets its services to employers for use in hiring and team development, to companies for building new and improving current business relationships, and to current and potential clients for many other purposes.

33.    DNAB's own promotional materials state that its behavioral assessments are used "to match the right people to the right roles" and to help

organizations "understand . . . their people" for purposes of hiring, team building, and performance management.

34.    DNAB charges fees to third-party organizations that purchase access to individuals' behavioral assessment reports.

## THE REPORTS ARE CONSUMER REPORTS UNDER FCRA

35.    The Reports constitute "consumer reports" as defined by FCRA. *See* 15 U.S.C. § 1681a(d)(1).

36.    The Reports are written communications bearing on an individual's character, general reputation, personal characteristics, and mode of living. *Id.*

37.    The Reports are used or expected to be used or collected for the purpose of serving as a factor in establishing an individual's eligibility for employment purposes. *Id.* §§ 1681a(d)(1)(B), (h). They evaluate an individual's behavioral tendencies, personality traits, decision-making patterns, risk propensity, emotional regulation, and other personal characteristics that are material to employment decisions.

38.    DNAB markets the Reports to employers and other organizations specifically for use in hiring decisions, team development, role placement, and employee evaluation.

## DNAB'S DISCLOSURE VIOLATED FCRA

39.    A consumer reporting agency may furnish a consumer report only under limited circumstances, including: (1) in response to a court order; (2) in accordance with the written instructions of the consumer; or (3) to a person which it has reason to believe intends to use the information for a permissible purpose enumerated in FCRA. 15 U.S.C. § 1681b(a).

40.    Publicly furnishing a consumer report on the internet—where it can be viewed by any person in the world—is not a permissible purpose under FCRA. *See id.*

41.    DNAB did not obtain Plaintiff's written instructions to disclose his Reports.

42.    DNAB did not receive a court order authorizing disclosure of Plaintiff's Reports.

43.    DNAB did not furnish Plaintiff's Reports to specific persons whom it had reason to believe intended to use the information for a permissible purpose.

44.    Instead, DNAB made Plaintiff's Reports accessible to an unlimited and uncontrolled audience of unknown individuals via the internet.

45.    DNAB violated FCRA by uploading the Reports to a publicly accessible web server and hyperlinking to them from its commercial website. *See id.*

8

46. DNAB's disclosure was willful as defined by FCRA. *See* 15 U.S.C. § 1681n(a). DNAB knowingly and intentionally, or with reckless disregard of FCRA requirements and Plaintiff's statutory rights:

    a. Merged the two Reports into a single PDF file;

    b. Uploaded the merged file to its web server;

    c. Embedded a hyperlink to the merged file in Plaintiff's name on its public website's "Our Team" page.

47. DNAB took these actions without obtaining Plaintiff's written consent and with knowledge that the Reports contained highly sensitive personal information.

48. As a consumer reporting agency, DNAB knew or should have known its obligations under FCRA to protect the confidentiality of consumer reports and to furnish them only for permissible purposes.

## COUNT I
## WILLFUL VIOLATION OF THE FAIR CREDIT REPORTING ACT
## 15 U.S.C. § 1681n(a)

49. Mr. Samson realleges and incorporates by reference paragraphs 1 through 52 as if fully set forth herein.

50. DNAB is a consumer reporting agency as defined by FCRA. *See* 15 U.S.C. § 1681a(f).

51. The Reports are consumer reports as defined by FCRA. *See* 15 U.S.C. § 1681a(d)(1).

52. DNAB furnished Plaintiff's consumer reports to persons other than those authorized by FCRA. *See* 15 U.S.C. § 1681b.

53. Specifically, DNAB made Plaintiff's consumer reports publicly accessible on the internet, thereby furnishing them to an unlimited and uncontrolled audience of unknown persons without any permissible purpose under FCRA.

54. DNAB's disclosure of Plaintiff's consumer reports was willful as defined by FCRA. *See* 15 U.S.C. § 1681n(a).

55. DNAB acted knowingly and intentionally—or with reckless disregard—of FCRA's requirements and Plaintiff's statutory rights by creating, uploading, and hyperlinking to Plaintiff's consumer reports without his written consent.

56. Plaintiff has suffered and continues to suffer damages, including emotional distress, mental anguish, humiliation, and damage to his professional reputation due to DNAB's willful FCRA violation.

57. Plaintiff is entitled to recover actual damages or statutory damages of not less than $100 and not more than $1,000. *See* 15 U.S.C. § 1681n(a)(1)(A).

58. Plaintiff is entitled to recover punitive damages. *See* 15 U.S.C. § 1681n(a)(2).

59.    Plaintiff is entitled to recover his reasonable attorney's fees and costs. *See* 15 U.S.C. § 1681n(a)(3).

**COUNT II**
**INVASION OF PRIVACY – MISAPPROPRIATION OF NAME OR LIKENESS**

60.    Plaintiff realleges and incorporates by reference paragraphs 1 through 48 as if fully set forth herein.

61.    DNAB prominently featured Plaintiff's name on its commercial "Our Team" webpage with an embedded hyperlink directing visitors to his Reports.

62.    DNAB used Plaintiff's name in connection with his Reports to demonstrate the capabilities of its platform to prospective clients and customers.

63.    DNAB deliberately incorporated Plaintiff's Reports into its public-facing marketing materials to enhance the credibility and commercial appeal of its services.

64.    DNAB used Plaintiff's name in connection with his Reports for its own financial gain and commercial advantage.

65.    DNAB did not obtain Plaintiff's consent to use his name in connection with his Reports for promotional or commercial purposes.

66. DNAB's appropriation of Plaintiff's name in connection with his Reports constitutes both an invasion of his privacy and an invasion of his property right.

67. As a direct and proximate result of DNAB's misappropriation of his name in connection with his Reports, Plaintiff has been damaged in an amount equal to the advertising value misappropriated by DNAB for its use of his name in connection with his Reports in the manner and for the time it was used.

68. Plaintiff is entitled to recover the commercial value that DNAB derived from using his name in connection with his Reports to market its services, representing the amount DNAB would have been required to pay had it sought and obtained Plaintiff's authorization.

69. DNAB's conduct constitutes unjust enrichment, and Plaintiff is entitled to recover the value of the benefit DNAB received from its unauthorized use of his name and identity.

70. DNAB's appropriation of Plaintiff's name was willful and demonstrated a reckless disregard for his rights.

71. DNAB's conduct warrants an award of punitive damages pursuant to O.C.G.A. § 51-12-5.1(b).

## COUNT III
## INVASION OF PRIVACY – PUBLIC DISCLOSURE OF PRIVATE FACTS

72.    Plaintiff realleges and incorporates by reference paragraphs 1 through 48 as if fully set forth herein.

73.    DNAB made a public disclosure of private facts concerning Plaintiff when it published his Reports on its publicly accessible web server, hyperlinked to them from its commercial website, and allowed them to be indexed by search engines.

74.    The Reports contain private, secluded, and secret facts about Plaintiff that he has never disclosed publicly, including detailed information about his psychological profile, behavioral characteristics, personality traits, emotional regulation patterns, financial decision-making tendencies, and other highly personal attributes.

75.    These private facts include, among other things, statements that Plaintiff is "inflexible" and "perfectionistic," "ha[s] difficulty letting matters go," and "[h]as emotional impulses and makes spur of the moment decisions."

76.    The disclosure of these private facts would be offensive and objectionable to a reasonable person of ordinary sensibilities. Indeed, the publication of an individual's psychological and behavioral profile to the entire world via the internet is particularly offensive and objectionable.

13

77. Plaintiff is a respected behavioral scientist whose professional credibility and reputation depend on public confidence in his expertise and judgment. As such, the public disclosure of his private psychological profile is especially damaging to his professional standing and reputation in his field.

78. As a direct and proximate result of DNAB's public disclosure of embarrassing private facts, Plaintiff has suffered and continues to suffer actual damages, including mental anguish, emotional distress, humiliation, embarrassment, and damage to his professional reputation.

79. DNAB's conduct was willful, malicious, and demonstrated a reckless disregard for Plaintiff's privacy rights.

80. DNAB's conduct warrants an award of punitive damages pursuant to O.C.G.A. § 51-12-5.1(b).

## COUNT IV
## EXPENSES OF LITIGATION – O.C.G.A. § 13-6-11

81. Plaintiff realleges and incorporates by reference paragraphs 1 through 48 as if fully set forth herein.

82. DNAB's conduct in this litigation has been stubborn and litigious.

83. DNAB has caused Plaintiff to incur substantial expenses of litigation.

84. There was no bona fide controversy regarding DNAB's liability for its willful violations of FCRA and Georgia common law.

14

85.    Plaintiff is entitled to recover the expenses of this litigation from DNAB. *See* O.C.G.A. § 13-6-11.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Alain Samson respectfully requests that this Court enter judgment in his favor and against Defendant DNA Behavior Solutions LLC as follows:

1.    Statutory damages in the amount of $1,000 pursuant to 15 U.S.C. § 1681n(a)(1)(A);

2.    Actual damages for mental anguish and emotional distress;

3.    Actual damages in an amount equal to the advertising value and commercial benefit derived by DNAB from its misappropriation of Plaintiff's name;

4.    Reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1681n(a)(3) and O.C.G.A. § 13-6-11;

5.    Punitive damages in an amount to be determined by the jury pursuant to 15 U.S.C. § 1681n(a)(2) and O.C.G.A. § 51-12-5.1(b);

6.    Pre-judgment and post-judgment interest as allowed by law;

7.    Other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff Alain Samson hereby demands a trial by jury on all issues so triable.

15

Respectfully submitted this 23rd day of March, 2026.

*/s/ Joshua J. Smith*

Joshua J. Smith
Georgia Bar No. 562327
JJS Legal LLC
520 W Ponce de Leon Avenue
Suite 2020
Decatur, GA 30031
Telephone: (404) 500-6457
Email: joshua@jjs.legal

*Attorney for Plaintiff Alain Samson*

16